UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K&M INSTALLATION, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED BROTHERHOOD OF CARPENTERS, LOCAL 405, et al.,<br><br>    Defendants. | Case No. 15-cv-05265-MEJ<br><br>**ORDER RE: MOTION TO CONFIRM ARBITRATION AWARD AND MOTION TO DISMISS**<br><br>Re: Dkt. No. 6 |

## INTRODUCTION

On August 12, 2015, an arbitrator issued a Decision and Award in favor of Defendants United Brotherhood of Carpenters, Local 405 ("Local 405") and Carpenters 46 Northern California Counties Conference Board ("Conference Board") (collectively, "Defendants") and against Plaintiff K&M Installation, Inc. ("K&M"). *See* Compl., Ex. A (Decision & Award, "Award"), Dkt. No. 1. K&M filed this action on November 17, 2015 seeking to vacate the Award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, et seq. *See* Compl.

Now pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and so-called "Counter-Motion" to Confirm the Award.[1] Mot., Dkt. No. 6. Although K&M has not filed a motion to vacate, Defendants seem to treat the Complaint as both a complaint and a motion. *See* Mot. It is unclear whether K&M intended its Complaint to operate as a motion to vacate the award. On one hand, K&M vaguely asserts it "brought the [sic]

---

[1] Although Civil Local Rule 7-2(b) requires all motions to be filed as one document, Defendants filed a separate Motion (Dkt. No. 6) and a Memorandum of Points and Authorities in Support of Motion (Dkt. No. 7). For citation purposes in this Order, the Court's references to Defendants' Motion refer to the Memorandum of Points and Authorities.

within Complaint to vacate an Arbitration Award[,]" which could indicate it meant for its Complaint to serve as motion to vacate. Opp'n at 10, Dkt. No. 15. However, elsewhere in its Opposition, K&M requests leave to amend if the Court dismisses the Complaint. *Id.* at 6 ("[E]ven if the Court agrees to dismiss the Complaint, it should grant leave to amend because Defendants have not shown that the pleadings could not possibly be cured by the allegation of other facts." (citing *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

Despite this somewhat unusual procedural posture, the Court ultimately concludes it is unnecessary to resolve the question of whether K&M has filed a motion to vacate. Defendants have filed a Motion to Confirm the Award, and K&M has had an opportunity to defend against that Motion and the enforcement of the Award. *See* Opp'n. Having considered the parties' arguments and the relevant legal authority, the Court now **GRANTS** Defendants' Motion to Confirm the Award for the reasons set forth below.

## BACKGROUND

K&M is a California corporation in the business of, among other things, installing lockers in building construction. Compl. ¶¶ 5, 9. Defendant Conference Board is a labor organization, and Defendant Local 405 is one of its affiliated local unions. *Id.* ¶¶ 6-7; Mot. at 1.

Defendants sought to form an agreement with K&M approximately five years ago. Compl. ¶ 11. They allegedly represented that K&M could perform work on lockers and locker systems using employees covered by the Office Modular Systems Addendum (the "Modular Agreement") to the 46 Northern California Counties Carpenter Master Agreement for Northern California (the "Master Agreement"),[2] and that the Modular Agreement would govern any locker installation work. *Id.* K&M signed the most recent extension to the Modular Agreement on or about September 26, 2014. *Id.*

K&M also employs members of the Sheet Metal Workers International Association Local Union No. 104 ("Local 104") to install lockers and has done so for nearly 20 years. *Id.* ¶ 10. K&M signed its most recent agreement with Local 104 (the "Sheet Metal Agreement") in June

---

[2] The Master Agreement is also referred to by the parties as the "Full Carpenter's Agreement."

2015. *Id.* Most of K&M's locker installation jobs have utilized composite crews of employees working under both the Sheet Metal Agreement and the Modular Agreement, and K&M alleges it has reported and paid all hours worked for its locker installation work under both Agreements. *Id.* ¶ 12. According to K&M, Defendants had been aware of K&M's use of composite crews since they first approached K&M about signing an agreement, and Defendants never objected to this arrangement. *Id.* ¶¶ 13-14.

Local 405 filed a grievance[3] against K&M on July 7, 2015 when a dispute arose between them regarding the installation of metal lockers on a California public works project for the Milpitas Unified School District. *Id.* ¶ 8; *see also* Award at 1. Defendants insisted that all locker installation work should be performed pursuant to the Master Agreement, a collective bargaining agreement to which K&M, the Conference Board, and Local 405 are signatories. Compl. ¶ 14; Declaration of Ezekiel Carder ¶ 3, Dkt. No. 8 (Local 405 "filed a grievance against K&M for its failure to follow the terms of the Master Agreement for work performed on locker installation at Milpitas High School."); Master Agmt., Dkt. No. 19-(1-2). K&M alleges the "purpose and the object of the Grievance was to force K&M to assign locker installation work away from employees covered by the Modular Agreement and the Sheet Metal Workers Agreement." Compl. ¶ 18.

Arbitrator Robert M. Hirsch heard the dispute[4] on August 11, 2015 and issued his decision on August 12, 2015. *Id.* ¶ 20; *see* Award. The Arbitrator found that K&M was a party and bound to the current Master Agreement. Award at 2. The Arbitrator thus ordered K&M to (1) cease and desist any further violations of and comply with the Master Agreement for the remainder of its term; (2) pay a total of $369.60 in wages as the wage differential between the Modular Agreement and the Master Agreement; (3) cease and desist from improperly reporting and untimely paying

---

[3] Neither K&M nor Defendants provided a copy of the grievance with their briefs or the Complaint.

[4] The Master Agreement provides that if a union and employer cannot resolve a grievance within three days, the Board of Adjustment and an impartial Arbitrator shall hear the dispute. Master Agmt. § 51(4). If the Board of Adjustment cannot reach a majority vote, "the Arbitrator shall participate and his/her decision shall be final and binding." *Id.* In this case, the Board of Adjustment deadlocked, and the matter was thus submitted to an Arbitrator. Award at 1.

3

1 Trust Fund contributions as required by the Master Agreement; (4) correctly report and timely pay
2 all required Trust Fund contributions; (5) submit to an audit of its books and records; and (6) pay
3 $300 for its share of the costs of the proceedings. *Id.* at 2-4.

### LEGAL STANDARD

Section 301 of the LMRA grants district courts the authority to enforce or vacate a final arbitration award. 29 U.S.C. § 185. Likewise the FAA provides another statutory basis for confirming or vacating an arbitration award. *See* 9 U.S.C. § 9-11. "Confirmation is a summary proceeding that converts a final arbitration award into a judgment of the court." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1094 n.1 (9th Cir. 2011) (citation omitted).

Despite courts' ability to confirm or vacate arbitration awards, "judicial review of an arbitration award is both limited and highly deferential." *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc. of Ariz.*, 84 F.3d 1186, 1190 (9th Cir. 1996) (citation omitted). This is true under both the FAA and the LMRA. The FAA permits a district court to vacate an arbitration award only:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption [on the part of the arbitrators]; (3) where the arbitrators were guilty of . . . . misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) (holding Section 10 provides the FAA's exclusive grounds for vacatur of an arbitration award).

The court's review of an arbitrator's decision under section 301 of the LMRA is likewise "extremely limited." *Sheet Metal Workers Intern. Ass'n, Local No. 359, AFL-CIO v. Ariz. Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988).

> The arbitrator's factual determinations and legal conclusions generally receive deferential review as long as they derive their essence from the contract. If, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. This remains so even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions.

4

*Id.* (internal citations omitted).  In general, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  *Garvey v. Roberts*, 203 F.3d 580, 588 (9th Cir. 2000) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).  Nonetheless, the Ninth Circuit has "identified four instances in which vacatur of an arbitration award under section 301 is warranted: (1) when the award does not draw its essence from the collective bargaining agreement; (2) when the arbitrator exceeds the scope of the issues submitted; (3) when the award runs counter to public policy; and (4) when the award is procured by fraud."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir. 2001) (citations omitted); *see also S. Cal. Gas Co. v. Util. Workers Union of Am., Local 132, AFL-CIO*, 265 F.3d 787, 792-93 (9th Cir. 2001).[5]

## DISCUSSION

Although Defendants have moved to confirm the Award, K&M bears the burden of defending against enforcement.  *See BraunHagey & Borden LLP v. GMP Haw., Inc.*, 2014 WL 662496, at *3 (N.D. Cal. Feb. 20, 2014) ("The burden of proof in a proceeding to confirm an arbitration award is on the party defending against enforcement." (citing *Injazat Tech. Fund, B.S.C. v. Najafi*, 2012 WL 1535125, at *2 (N.D. Cal. May 1, 2012)); *see also U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010) ("The burden of establishing grounds for vacating an arbitration award is on the party seeking it." (citation omitted)).  K&M presents three reasons to vacate the Award under both the LMRA and the FAA.  *See* Compl. ¶ 23(a)-(c).  K&M argues the Award should be vacated under the LMRA because the Award (1) does not draw its essence from a collective bargaining agreement because it ignored the Master Agreement's

---

[5] The Court acknowledges there is some conflict about whether the FAA applies to arbitration of collective bargaining agreements.  *See Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1115 n.7 (9th Cir. 2012) (recognizing the Ninth Circuit had not yet decided this issue); *but see Reg'l Local Union No. 846 v. Gulf Coast Rebar, Inc.*, 83 F. Supp. 3d 997, 1012-13 (D. Or. 2015) (extensively analyzing the FAA and LMRA's requirements and concluding that the "standard of review under the [FAA] and the LMRA will result in similar outcomes" and "are interchangeable.").  Given that this issue does not impact the outcome of this case, and the fact that the parties do not raise this issue in their briefing, the Court does not find it necessary to weigh in on this conflict.

plain language and is based on the Arbitrator's own brand of industrial justice, and (2) violates public policy as it forces K&M to assign particular work to employees in a particular labor organization rather than employees in another labor organization. *Id.* ¶ 23(a), (c), (d). K&M's third argument posits the Award should be vacated under the FAA because the Arbitrator exceeded the scope of his authority by seeking to bind Local 104 to the Award by taking work away from its members. *Id.* ¶ 23(b).

**A.    Labor Management Relations Act**

       1.    <u>Whether the Award Draws Its Essence from the Collective Bargaining Agreement or Whether the Arbitrator Dispensed His Own Brand of Industrial Justice</u>

Under the LMRA, an award "draws its essence" from an agreement when it is based on a plausible interpretation of that agreement. *Madison Indus.*, 84 F.3d at 1190 (citing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)); *Ariz. Mech. & Stainless*, 863 F.2d at 653. When an award does not draw its essence from a collective bargaining agreement, the arbitrator has "dispense[d] his own brand of industrial justice." *Haw. Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1181 (9th Cir. 2001) (brackets in original) (quoting *Enter. Wheel & Car Corp.*, 363 U.S. at 597). "It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (internal marks and quotations omitted).

K&M asserts the Award does not draw its essence from the Master Agreement because it ignores the plain language of that Agreement. Compl. ¶ 23(c).[6] But K&M fails to identify precisely what language in the Master Agreement the Arbitrator allegedly ignored, and it does not provide any evidence that the Arbitrator actually ignored the Master Agreement. K&M instead argues the Award should be vacated because it "does not disclose how the Arbitrator determined

---

[6] The Court does not review the Arbitrator's determination that K&M "is a party to and bound to the current Carpenters Master Agreement." Award at 2; *see Broadway Cab Co-op., Inc. v. Teamsters & Chauffeurs Local Union No. 281, IBT*, 710 F.2d 1379, 1382 (9th Cir. 1983) ("We defer not only to an arbitrator's factual determinations, but ordinarily to his legal conclusions as well."). K&M also does not contest this finding. *See* Compl. ¶ 14 (stating K&M is a signatory to the Master Agreement).

6

1  that the Scope of Work provision in the Carpenters Master Agreement governed locker
2  installations" and because it "never cites to any particular provision within the [Master]
3  Agreement to support its determination."  Compl. ¶ 21.  In its Opposition, K&M also asserts the
4  Award is based on an outdated and invalid Master Agreement.  Opp'n at 7-8.

5       Neither of K&M's arguments have merit.  First, the Arbitrator is not required to provide
6  specific support or to give reasons for his Award.  *See Enter. Wheel & Car Corp.*, 363 U.S. at 598
7  ("Arbitrators have no obligation to the court to give their reasons for an award.").  And contrary to
8  K&M's contention, the Arbitrator in fact cites specific provisions of the Master Agreement.  For
9  instance, the Arbitrator ordered K&M to "submit to an audit of all of its books and records[,]"
10 namely "all those referred to in *Section 21* of the Carpenters Master Agreement[.]"  Award at 3
11 (emphasis added); *see* Master Agmt. § 21 (provision pertaining to audits of employers).  The
12 Arbitrator also "ordered that pursuant to *Section 51*, [K&M] shall pay the sum of $300.00 as and
13 for its share of the cost of these proceedings."  *Id.* at 4 (emphasis added); *see* Master Agmt. §
14 51(10) ("The expenses of the Joint Adjustment Board and the Impartial Arbitrator . . . shall be
15 borne equally by the parties hereto.").

16      Additionally, even where the Award does not cite to a particular provision, it nonetheless
17 refers to actual terms and requirements under the Master Agreement.  For example, the Award
18 requires K&M to pay two workers a total of $369.60, "the wage differential between the Office
19 Modular Systems Addendum and the Carpenters Master Agreement."  Award at 3.  Section 39 of
20 the Master Agreement sets forth the wage rates for each classification of workers.  K&M has not
21 shown how the Arbitrator's calculation of the wage differential is not a plausible interpretation of
22 the Master Agreement.  The Award also requires K&M to (1) "cease and desist from improperly
23 reporting and untimely paying Trust Fund contributions that are required to be paid to the various
24 Trust Funds *referred to in the Carpenters 46 Counties Master Agreement*" and (2) "correctly
25 report and timely pay all required contributions to each and all of the various Trust Funds *referred*
26 *to in the Carpenters 46 Counties Master Agreement*."  Award at 3 (emphases added).  Again,
27 K&M has not demonstrated that the Arbitrator's order to pay into these trust funds is not based on
28 a plausible interpretation of the Master Agreement.  *See* Master Agmt. § 40 (requiring employers

to contribute to the Carpenters Health and Welfare Trust Fund for California); *id.* § 41 (requiring employers to contribute to the Carpenters Pension Trust Fund for Northern California); *id.* § 42 (requiring employers to contribute to the Carpenters Annuity Trust Fund for Northern California). It thus appears the Award can be traced back to specific provisions the Master Agreement, and K&M does not argue that the Arbitrator's interpretations of those provisions are implausible.

Second, as Defendants point out, the Master Agreement contains a provision, Section 50(8), which states in relevant part:

> The individual employer or prime carpentry contractor shall provide all materials and the individual employer or prime carpentry contractor shall employ all employees covered by this Agreement who shall be shown on its payroll records except as provided herein.

*Id.* § 50(8). Even if K&M is correct that the Master Agreement did not explicitly include installation of locker work as being covered by that Agreement, the Arbitrator did have grounds to grant an award based on that agreement. *See Garvey*, 203 F.3d at 588 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (brackets in original) (quoting *United Paperworkers*, 484 U.S. at 38)).

Finally, although K&M claims the Award is based on an invalid agreement—namely, the 2011 Master Agreement that expired in 2014—it provides no evidence to support this assertion. Opp'n at 7 (asserting "it is undisputed that the Arbitrator based his entire award on the 2011 Carpenters Agreement—an agreement that was no longer valid and had not been valid for nearly a year."). But this fact is disputed. Defendants suggest that K&M believes the Award is based on the 2011 version and not the 2014 Master Agreement because Defendants initially mistakenly attached the 2011 Master Agreement to its Motion, an error it later corrected. Reply at 2-3, Dkt. No. 18; *see* Dkt. No. 8-1 (2011 46 Northern California Counties Carpenters Master Agreement for Northern California); Dkt. No. 19 (Notice of Errata). In their Reply, Defendants assert that "[e]xhibits 1-3 attached to the Award included the parties' current and valid Master Agreement,

effective following the parties' memorandum of understanding signed on September 26, 2014."[7] Reply at 2. K&M did not challenge Defendants' contention for instance by providing the exhibit containing the "[c]opy of the Carpenters Master Agreement for Northern California" that was introduced at the arbitration. *See* Award at 1 (list of exhibits introduced at arbitration). K&M also does not point to inconsistencies in the Award to suggest the Arbitrator relied on the 2011 Master Agreement and not the 2014 version. Moreover, in the Award, the Arbitrator specifically found K&M "is a party to and bound to the *current* Carpenters Master Agreement." Award at 2 (emphasis added). The arbitration took place on August 11, 2015, and the Arbitrator rendered his decision the next day. There is nothing to suggest the "current Carpenters Master Agreement" refers to anything but the Master Agreement in effect at that time, i.e., the 2014 Master Agreement. As it stands, although the Award does not specifically identify the Master Agreement by year—i.e., the 2011 or 2014 Master Agreement—K&M has not shown that the Arbitrator based the Award on the outdated 2011 version.

In sum, the Award is based on specific provisions of the Master Agreement and therefore draws its essence from the Master Agreement, with no evidence the Arbitrator dispensed his own brand of industrial justice. As such, the Court declines to vacate the Award on these grounds.

2. <u>Whether the Award Violates Public Policy</u>

K&M argues the Award violates public policy under federal labor law, such as section 8(b)(4)(D) of the National Labor Relations Act ("NLRA"),[8] because it forces K&M to assign work

---

[7] Defendants refer to exhibits 1-3 of the Award, but neither Defendants nor K&M provided those exhibits to the Court. *See* Award at 1 (noting "[t]he following exhibits were introduced: (1) Copy of the Carpenters Master Agreement for Northern California; (2) Copy of the Carpenters Memorandum Agreement signed and dated by the Employer [K&M] on September 26, 2014; [and] (3) Copy of an Office Modular Systems Addendum signature page signed and dated by the Employer on September 26, 2014[.]").

[8] Section 8(b)(4)(D) of the NLRA provides that

> It shall be an unfair labor practice for a labor organization or its agents--
> . . . .
> (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or

9

to employees in one particular labor organization. Compl. ¶ 23(a). In other words, if K&M were to comply with the Award and only hire employees covered by the Master Agreement, it would be barred from employing workers covered by the Sheet Metal or Modular Agreements. *See id.* ¶ 22. K&M notes it "has never been ordered by the Board to assign the work to any such employees."[9] *Id.* Defendants contend K&M's public policy argument is misplaced as the mere possibility of a violation of section 8(b)(4)(D) does not warrant vacating the Award. Mot. at 6-8. They further note that "at no time during the hearing did K&M raise the argument that the grievance was pre-empted by or in violation of public policy on grounds of the National Labor Relations Act, Section 8(b)(4)(i)(D)." *Id.* at 1.

As noted above, "judicial review of an arbitration award is both limited and highly deferential." *Madison Indus.*, 84 F.3d at 1190. Under the LMRA, however, "one narrow exception to this . . . is the 'now-settled rule that a court need not, in fact cannot, enforce an award which violates public policy.'" *Aramark Facility Servs. v. Serv. Empls. Int'l Union, Local 1877, AFL CIO*, 530 F.3d 817, 823 (9th Cir. 2008) (quoting *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1209 (9th Cir. 1989) (en banc); additional citation omitted). "[T]he question of public policy is ultimately one for resolution by the courts." *United Paperworkers*, 484 U.S. at 43 (quotation

---

> otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is--
> . . . .
> (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the [National Labor Relations] Board determining the bargaining representative for employees performing such work[.]

29 U.S.C. § 158(b)(4)(D).

[9] K&M appears to be referring to the National Labor Relations Board, rather than Defendant Conference Board. *See* 29 U.S.C. § 158(b)(4)(D) (" . . . unless such employer is failing to conform to an order or certification of the [National Labor Relations] Board determining the bargaining representative for employees performing such work").

omitted). Nevertheless, courts should be cautious in vacating an arbitration award on public policy grounds "because the finality of arbitral awards must be preserved if arbitration is to remain a desirable alternative to courtroom litigation." *Aramark Facility Servs.*, 530 F.3d at 823 (citation and internal marks omitted). "Moreover, before the award will be vacated as against public policy, the policy violation must be 'clearly shown.'" *Id.* (quoting *Stead Motors*, 886 F.2d at 1225)).

Courts engage in a two-step inquiry to determine whether to vacate an arbitration award on public policy grounds under section 301 of the LMRA. First, the court must find that an "explicit, well defined and dominant public policy exists[.]" *Matthews*, 688 F.3d at 1111 (quotation omitted). "[S]uch a policy [is] satisfactorily demonstrated only 'by reference to the laws and legal precedents' and [cannot] be the product of the parties' or the courts' 'general considerations of supposed public interests.'" *Stead Motors*, 886 F.2d at 1210 (quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983)). Second, the court must also determine that "the policy is one that specifically militates against the relief ordered by the arbitrator." *Matthews*, 688 F.3d at 1111 (quotation omitted). "The party seeking to vacate the arbitration award bears the burden of showing that the arbitration award violates an 'explicit, dominant and well-defined' public policy." *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 174 (9th Cir. 1995), *opinion amended on denial of reh'g* (9th Cir. Jan. 30, 1996) (quoting *Stead Motors*, 886 F.2d at 1211).

As to the first inquiry, K&M points to the NLRA's stated policy of "prevent[ing] obstructions to interstate commerce by encouraging collective bargaining and by protecting 'the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.'" Opp'n at 9 (quoting 29 U.S.C. § 151). The Ninth Circuit has recognized that "[t]he public policy set forth in the NLRA represents 'well defined and dominant public policy.'" *Van Waters & Rogers Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local Union 70*, 913 F.2d 736, 742 (9th Cir. 1990) (quotation omitted). Indeed, the Supreme Court has also recognized the NLRA's policy, noting

11

that with the statute's enactment, "Congress expressly recognized that collective organization of segments of the labor force into bargaining units capable of exercising economic power comparable to that possessed by employers may produce benefits for the entire economy in the form of higher wages, job security, and improved working conditions." *Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*, 436 U.S. 180, 190 (1978). The NLRA "protect[s] the collective-bargaining activities of employees and their representatives[.]" *Id.* at 191.

For K&M, the analysis stops there. *See* Opp'n at 9. However, simply identifying a "well defined and dominant public policy" of the NLRA is not enough to trigger the LMRA's public policy exception—the identified policy must also specifically militate against relief provided by the Award. For instance, in *Foster Poultry Farms*, an employer sought to vacate on public policy grounds an arbitration award reinstating two former employees whom the employer dismissed after they tested positive for drug use in a random test conducted pursuant to Department of Transportation ("DOT") regulations. 74 F.3d at 171-73. The Ninth Circuit acknowledged that "the DOT regulations articulate a 'well defined and dominant' public policy prohibiting employees who test positive for drug use from driving commercial motor vehicles." *Id.* at 174. But then it proceeded to consider how the policy related specifically to the award. The court noted that "[t]he DOT regulations only prohibit[ed] employees who test[ed] positive for drug use from operating commercial motor vehicles; the DOT regulations d[id] not require that such employees be automatically discharged." *Id.* The Ninth Circuit thus held the award reinstating the discharged employees did not violate the public policy behind the DOT regulations "[b]ecause the DOT regulations d[id] not make it illegal to reinstate employees who test positive for drug use," and thus "it [could ]not be said that the DOT regulations specifically militate[d] against the relief ordered by the arbitrator[.]" *Id.* (citation and internal marks omitted).

Similarly, K&M has not shown how the NLRA's policy specifically militates against the Award in this case. First, as noted, the NLRA protects the rights of workers to form labor organizations and collectively bargain, 29 U.S.C. § 151; but the Award does not implicate these rights. It does not, for instance, prohibit individuals belonging to the pool of labor organizations that are parties to the Master Agreement from which K&M may draw its workers from forming

labor organizations or collectively bargaining, nor does it address employees' rights to form a labor organization or engage in collective bargaining. *See id.* Instead, the Award concerns K&M's obligations under the Master Agreement. *See* Award.

Second, there is no indication section 8(b)(4)(D) of the NLRA prohibits the Arbitrator from ordering K&M to comply with the Master Agreement, including those terms requiring K&M to employ those persons who are also parties to the Agreement. Section 8(b)(4)(D) prohibits labor organizations from requiring an employer to "assign particular work to employees in a particular labor organization . . . rather than to employees in another labor organization" by (1) engaging or encouraging workers to strike or (2) threatening, coercing, or restraining any person engaged in commerce. 29 U.S.C. § 158(b)(4)(D). As there is nothing to suggest Defendants engaged in a strike, the question is whether Defendants somehow threatened, coerced, or restrained K&M into hiring only those persons covered by the Master Agreement. K&M did not specifically identify any threats or coercion against it. Nonetheless, taking K&M's Complaint and Opposition as a whole, the Court construes K&M to be arguing that the very fact that Defendants filed the grievance against it was a method of coercion or restraint in violation of section 8(b)(4)(D).

"A union's pursuance of a grievance through arbitration can be considered coercive under section 8(b)(4) [of the NLRA] if that grievance is based on an interpretation of a collective bargaining agreement that furthers an unlawful object." *Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union*, 997 F. Supp. 2d 1037, 1043 (D. Alaska 2014), *aff'd*, 611 F. App'x 908 (9th Cir. 2015). Labor organizations are permitted to pursue a "primary objective to preserve work in the face of a threat to jobs"; they may not, however, engage in secondary objectives that are "directed at affecting the business relations of neutral employers and are tactically calculated to achieve union objectives outside the primary employer-employee relationship." *N.L.R.B. v. Int'l Longshoremen's Ass'n, AFL-CIO (ILA II)*, 473 U.S. 61, 79, 81 (1985) (quotations omitted). Consequently, "it is coercive if a union pursues an interpretation of a collective bargaining agreement in arbitration that promotes secondary union activity and not primary work preservation activity." *Am. President Lines*, 997 F. Supp. 2d at 1043. Courts accordingly apply a two-part test when determining whether an agreement is a lawful work

preservation agreement: (1) the union's objective must be the preservation of work traditionally performed by employees represented by the union; and (2) the contracting employer must have the power to give the employees the work in question. *ILA II*, 473 U.S. at 76 (citing *N.L.R.B. v. Int'l Longshoremen's Ass'n, AFL-CIO (ILA I)*, 447 U.S. 490, 504 (1980)).

While the Arbitrator found the Master Agreement required K&M to hire only other parties to that Agreement, resulting in the exclusion of Local 104, the Agreement specifies that the "purpose" of this requirement is "to preserve and protect the work opportunities that will be available to employees covered by this Agreement at the jobsite or job yard." Master Agmt. § 50(1). This is a permissible goal of labor organizations. *See ILA II*, 473 U.S. at 79 ("[B]ona fide work preservation agreements and their enforcement may constitute protected primary goals."). K&M put forward no evidence to demonstrate that Defendants sought to undermine the Agreement's articulated goal or that Defendants had illicit secondary objectives. Nor is there any evidence the Arbitrator found otherwise. Accordingly, the Court has no grounds to find the Master Agreement furthers an unlawful object such that Defendants' grievance based on alleged violation of that agreement would constitute coercion; in other words, there is no evidence Defendants' pursued an unlawful objective when "engaging in its arbitration efforts" to require K&M to honor the Master Agreement. *Am. President Lines*, 611 F. App'x at 912. Without facts demonstrating otherwise, the Court "must uphold the arbitration award where . . . there is a permissible interpretation of the award that is not repugnant to the NLRA." *Id.* (citing *Douglas Aircraft Co. v. N.L.R.B.*, 609 F.2d 352, 354 (9th Cir. 1979); *cf. Enter. Wheel & Car Corp.*, 363 U.S. at 598 ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.")). Ultimately, K&M has not shown how the NLRA's policy specifically militates against the Arbitration Award.

Without more, the Court cannot find the Arbitration Award violates public policy.

**B.     Federal Arbitration Act**

K&M's final challenge against confirmation falls under the FAA. Specifically, K&M argues the Arbitrator exceeded the scope of his authority, "in part by attempting to bind Local 104

14

to the Award by taking work away from them." Compl. ¶ 23(b).  As discussed above, under the FAA, a court must confirm an arbitration award unless the award is vacated, which a court may do in only four limited circumstances.  *See* 9 U.S.C. § 10(a)(1)-(4); *see id.* § 9.  K&M only addresses the fourth ground: "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4);  Compl. ¶ 23(b).

"A party seeking relief under [9 U.S.C. § 10(a)(4)] bears a heavy burden."  *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013).  An incorrect interpretation or application of the governing law is insufficient for finding the arbitrator exceeded his or her powers.  *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003).  Rather, arbitrators exceed their powers when the award is "completely irrational or exhibits a manifest disregard of law[.]"  *Id.* (quotations and citations omitted).

An award is "completely irrational" only where "the arbitration decision fails to draw its essence from the agreement."  *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (edits and quotation omitted).  This "standard is extremely narrow."  *Id.*  "An award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions."  *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009) (quotation omitted).

"Manifest disregard of law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law."  *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012) (quotation omitted).  In order to vacate an award due to a manifest disregard of law, the record must clearly show that the arbitrator recognized but nevertheless ignored the applicable law, *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010), which "must be well defined, explicit, and clearly applicable," *Carter v. Health Net of California, Inc.*, 374 F.3d 830, 838 (9th Cir. 2004) (quotation omitted).

K&M does not argue the Award represents a manifest disregard of the law and otherwise fails to show that the Award does not draw its essence from the Master Agreement.  While K&M argues the Arbitrator exceeded the scope of his authority by attempting to bind Local 104 to the

15

Award by taking work away from them, Compl. ¶ 23(b), it does not explain how this exceeds his authority. Defendants argue the Court should confirm the Award because it references specific portions of the Master Agreement and therefore draws its essence from the Agreement. Mot. at 9. As the Court has found above, the Arbitrator based the Award on provisions of the Master Agreement, and the Court has no grounds to question that the Award draws its essence from the Agreement. As such, it is not completely irrational and the Arbitrator did not exceed his powers. *See SFIC Props., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94, Local Lodge 311*, 103 F.3d 923, 925 (9th Cir. 1996) ("An award draws its essence from the [collective bargaining agreement] when it is based on language in the [collective bargaining agreement]."). Accordingly, the Court again has no grounds to vacate the Award pursuant to the FAA. *See Weiner v. Original Talk Radio Network Inc.*, 2013 WL 1856568, at *1 (N.D. Cal. May 2, 2013), *aff'd*, 620 F. App'x 568 (9th Cir. 2015) (granting motion to confirm where party defending against confirmation failed to demonstrate grounds for vacatur); *Katz v. Round Hill Sec., Inc.*, 2005 WL 2257527, at *6 (N.D. Cal. Sept. 16, 2005) (same).

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Defendants' Motion to Confirm the Award, **CONFIRMS** the Arbitration Award, and **DISMISSES** this case.

The Court will issue a judgment by separate Order.

**IT IS SO ORDERED.**

Dated: April 18, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge